JOSEPH N. BACON *vs.* EBENEZER WOODWARD & others.

A testator gave to his wife all his estate, real and personal, " under the following condi-
tions: She to be residuary legatee and to receive the entire income thereof during her nat-
ural life, to use or dispose of or to give away to any of her relations or friends so much as
shall not be given in the following legacies: namely, I direct her to take and maintain
our two grandchildren, the two daughters of our deceased son, provided their mother
and father in law will let her have them to bring up and educate in that way she thinks
best for the children; but if the parents will not consent to give them up to their grand-
mother to be so educated, then she shall be at liberty to do for the children what she
pleases." Then followed legacies to the grandchildren, which, in case they died unmar-
ried, were to go to several charitable societies named; and a legacy to another woman
in case she should outlive the testator and his wife; and then this clause: " The remain-
der of my estate, after my wife has used and given away what she chooses, and all the
legacies and expenses are paid out of the estate, I give the balance left to the above
written societies in equal proportions." He appointed his wife " executor and residuary
legatee " and another person coexecutor, and empowered them to sell his real estate and
invest it in stocks or otherwise manage it at their discretion. *Held*, that the wife took
a fee in the real estate, which after her decease went to her heirs at law and not to the
societies.

BILL IN EQUITY by the surviving executor to obtain the in-
structions of the court upon the disposal of property held by
him under the following will of Hezekiah Eldredge :

" I give and devise and dispose of all my estate, save what
shall be necessary to pay my just debts and my funeral charges,
in the following manner :

" I give to my beloved wife Mary Eldredge all my estate,
both real and personal, under the following conditions : she to
be residuary legatee and to receive the entire income thereof
during her natural life, to use or dispose of or to give away to
any of her relations or friends so much as shall not be given in
the following legacies : namely, I direct her to take and main-
tain and educate our two grandchildren, the two daughters of
Charles H. Eldredge deceased, provided their mother and father
in law will let her have them to bring up and educate in that,
way she thinks best for the children ; but if the parents will not
consent to give them up to their grandmother to be supported
and educated as above stated, then she shall be at liberty to do
for the children what she pleases to do for them.   I give to my

granddaughters, Grace H. Eldredge and Ellen W. Eldredge, the minor daughters of Charles H. Eldredge deceased, ten thousand dollars, five thousand to each of them, to be put into the hands of guardians and trustees hereinafter named, at the decease of my wife; the trustees to hold the property on the following conditions, .viz.: The property shall never be given up to them while they remain single and unmarried either in their minority or after they become twenty one years of age; but they shall have the income only, which shall be applied to their support and education while minors, if the parents will give them up to the trustees as stated they should give them up to their grandmother. If the parents will not give them up to the entire disposal of the trustees to bring up and educate them, the interest or income of their portions shall be kept and added to the principal until they become twenty one years of age. Should either or both of them marry before they become of age, they shall on such marriage have one thousand dollars, and the balance, four thousand dollars, when they become twenty one. Should either or both of them die unmarried while minors, or after they have become of age, the property of the deceased shall go to the benevolent societies hereinafter named. Should either or both of them never marry, the property is to be holden by the trustees as a fund, and the income to be for their support so long as they live; and upon their decease, if unmarried, to go to the societies named; say it shall be equally divided between the American Board of Commissioners for Foreign Missions and the Home Missionary Society, the Bible Society, the Tract Society, the Education Society, to be paid at the convenience of the guardians and trustees.

"I give to Ann D. Cooper, should she outlive me and my wife, one thousand dollars. If she should not outlive us, it will then remain as part of my estate.

"The remainder of my estate, after my wife has used and given away what she chooses, and all the legacies and expenses are paid out of the estate, I give the balance left to the above written societies in equal proportions.

"In conclusion I appoint my beloved wife Mary Eldredge

my executor and residuary legatee." He made the plaintiff co-executor, and the plaintiff and the defendant Woodward guardians and trustees of his grandchildren ; and added, " I do also empower my executors to sell and dispose of my real estate and to invest it in stocks, or otherwise to manage it as they think best, all of which is left to their discretion."

The testator died in 1853, and his widow in 1857, and the two granddaughters were their heirs at law. The case was set down for hearing upon the bill and the answers of the charitable societies and the heirs at law.

*C. Atwood,* for the societies.

*S. Jennison,* for the heirs at law.

MERRICK, J. The only parties who have any real interest in the questions involved in the present suit are the heirs at law of Mary Eldredge, deceased, on the one side, and the Board of Commissioners for Foreign Missions and the several religious and charitable societies mentioned in the bill, on the other. They all concede that the allegations in the bill are true ; and they severally submit to the court to make and enter such decree as in view of the facts alleged shall appear to be required by law for the determination of all matters in controversy between them, and the maintenance and protection of their respective rights. These parties severally claim to be exclusively entitled, under the will of Hezekiah Eldredge, to all the real estate of which he died seised and possessed ; and of course each of them contests the claim of the other. Their rights accordingly depend upon the provisions, and the legal construction to be given to the provisions in the will. No question is made respecting the ownership or disposition of the personal property of the testator. Whether any could have been raised is now wholly immaterial, since all controversy in relation to it is here expressly waived and abandoned.

The precise question then which remains in controversy between the parties is, whether Mary Eldredge took an estate in fee, or for her own life only, in the real estate devised to her in the will. If it was the former, the title to the estate was abso-'ute in her, and after her decease it descended to her heirs ; if

the latter, it is conceded that it belongs in equal proportions to the several societies who here claim to own it.

The will is written in a very inartificial manner, and was evidently drawn up by a person possessing little knowledge of the law or of the import of legal and technical terms, and of course poorly qualified for the preparation of such an instrument. It is to this unskilfulness that may be traced the inaccuracies of expression in its provisions, which have occasioned the doubt and uncertainty felt by the parties in their inquiries concerning the rights conferred upon them by it. But the difficulties arising from this cause are by no means insuperable. Upon examining all parts of the will we think that the intention of the testator may be satisfactorily ascertained, and this intention should control the construction to be given to it, if such an interpretation can be adopted consistently with the rules of law.

It is quite certain that the testator meant to dispose of his whole estate by his will. He commences it with this express declaration. He proceeds by saying, " I give to my beloved wife Mary Eldredge all my estate, both real and personal, under the following conditions." It is perfectly well settled that these words, " all my real estate," are sufficient to create a fee; 4 Kent Com. 535 & note; 6 Cruise Dig. *tit.* 38, *c.* 11, § 25; *Godfrey* v. *Humphrey*, 18 Pick. 537; and they must in all instances convey an estate of inheritance, if there be nothing in other parts of the will to control their operation, and show that they were intended to have a more limited effect. It must be held, therefore, that Mrs. Eldredge took an estate in fee by force of these general words in the devise to her, unless their usual and ordinary legal import is restricted by the conditions upon which it is made dependent, or by provisions and directions in other parts of the will. The portions of it which are supposed by the societies who claim the estate, and which they rely upon, to show that she took only a life estate, are the description given of her as " residuary legatee," the power conferred upon the executors to sell the real estate, and the devise to themselves in what they denominate the residuary clause.

In view of all the provisions of the will, we do not think that

those portions of it are entitled to the influence assigned them, or the effect contended for. In the first place, this effect does not appear to be in consonance with the clearly indicated intention of the testator. His first and chief object was manifestly to make provision for his own family; accordingly everything is in the beginning given to his wife, and to the grandchildren, who are his only heirs at law. His bequest to the societies subsequently described was entirely secondary and subordinate to this object. He made it depend upon future contingencies; and it was bestowed less with regard to them and their assistance, than to the accomplishment of another purpose upon which his mind appears to have been resolutely fixed. This purpose was, that no part of his estate should by any means come to the possession of the mother of his son's children ; and this is distinctly developed in the provisions made in relation to it. He makes it the first condition of the gift to his wife, that she should take, maintain and educate them, if their mother and father in law would give them up to her to be brought up and educated as she should think fit. This attempt to separate and perhaps also to alienate them from their mother indicates not only his want of confidence in her, but a settled determination to confine as far as possible the enjoyment of his property to the members of his own immediate family. The same purpose is still further developed in the peculiar character of the legacies of five thousand dollars to each of the grandchildren, following immediately after the gift to his wife, surrounded as they are by restrictions framed with scrupulous care to prevent any portion of them from coming by any means under the control or into the possession of their surviving parent. It is for these special ends, and to accomplish these definite purposes only, that the bequest over to the several enumerated societies is added. They are not the primary or leading objects of bounty ; they take nothing as long as the property can be used or enjoyed by the first legatees ; and they acquire an interest in it only if it shall appear that one or both of those die without having ever been married. The care, thus constantly displayed, to appropriate his whole property to the benefit of his immediate

family and relations, can hardly be considered consistent with the result of the construction contended for by the claimants under the residuary clause, that he gave to his wife only a partial and temporary interest in his estate.

That the devise to her of all his real and personal estate, being in terms sufficient to convey an estate of inheritance, was intended by the testator to be of that character, fulness and extent, is further and very clearly shown by the unlimited power which he bestows upon her to use, dispose of and give away the whole of it. That this large right was given in reference to the entire estate, and not merely, as has been suggested, in reference to the income and profits to be derived from it, or to so much of it only as consisted of personal property, is readily seen upon examining the particular provision in which the bestowal of it, although expressed in the peculiar and awkward phraseology observable in other parts of the will, is to be found. She is " to be residuary legatee, and to receive the entire income of the estate during her natural life, to use or dispose of or to give away to any of her relations and friends so much as shall not be given in the following legacies." The limitation here described is definitely stated. So much as shall be wanted for the payment of the designated legacies she is not to dispose of or give away. This is the exception. As to what remains her power is left without restraint, and her freedom of choice and action without qualification. The consequence cannot be mistaken. It follows as a necessary implication that the testator intended that her power and right of disposition over all parts of the estate, not saved and withheld by this special and definite exception, should be unqualified and complete. He makes no distinction between the real and personal property; but invests her with the same authority and the same rights alike to both. His gift is just as large and comprehensive in relation to the one as to the other, and is made upon no condition in respect to either, that her title shall be absolute and unqualified, or limited and partial, accordingly as she shall or shall not sell, give away or dispose of it, but without any restriction, in order that she might in every particular occupy, enjoy and dispose of the whole and

every part of both at her own uncontrolled will and pleasure. There can be no more complete ownership of property than what results from undisturbed and undisputed possession, united with an acknowledged and undisputed power and right of its absolute disposal.    But in addition to the considerations, which are of weight sufficient to be deemed conclusive, there still remains the significant fact that the devise to Mrs. Eldredge was charged, in a contingency which might occur, with the maintenance and education of the testator's grandchildren.    Her acceptance of the provision made for her, would by necessary implication be an assumption on her part of that duty, and would legally impose upon her that obligation.    *Felch* v. *Taylor*, 13 Pick. 133.    *Swasey* v. *Little*, 7 Pick. 296.    *Newell* v. *Hill*, 2 Met. 180.    And it is a general rule that if a testator creates a charge upon the devisee personally in respect of the estate devised, he takes it upon that condition, and becoming thus subject to the burden imposed, he acquires thereby, and without words of limitation, an estate of inheritance by necessary implication; and this on the principle that otherwise, what must legally be considered as having been intended as a benefit, might justly be changed into a positive disadvantage and loss.    4 Kent Com. 540.    6 Cruise Dig. tit. 38, *c.* 11, §§ 65 *& seq.* *Wait* v. *Belding*, 24 Pick. 129.    This charge upon Mrs. Eldredge was plainly personal upon her in reference to the provision in the will in her behalf; she was not only to expend money in the support, maintenance and education of the children; but she was to take them into her own individual care, and thus make herself responsible for their future condition and welfare. Whether this is a charge which, in reference to the advantages to be derived by her under the will, would make the devise, unaccompanied by express words of limitation, convey an estate in fee, need not now be definitely determined, since from other considerations it appears that she is entitled to such an estate. But it may fairly be considered as very significant proof of the intention of the testator that it should have that effect.    It shows that he had, as he declares, not only an affectionate regard for his wife, but that he reposed the utmost confidence in

her judgment and fidelity ; and it can hardly be supposed that in devolving upon her an expensive, as well as a most interesting and delicate trust, he would have shortened and narrowed his devise by making it convey to her only an estate for life.

It is even less likely that such an effect should have been intended to be produced by describing her in the will as a " residuary legatee." In the connection in which that expression is used, it is of very little moment, and of no real significance. She is so called in reference both to the real and personal estate; and so applied, it deserves to be considered only as tending to show that the draughtsman who prepared the instrument did not fully apprehend the meaning of the term he used, rather than as affecting a previously expressed devise, or as narrowing or diminishing the character and extent of the estate which it created and conveyed. Certainly that influence or control ought not to be attributed to it when immediately followed, as it is here, by a concession to the devisee of the most ample and unqualified power to dispose of the estate.

Very much the same considerations are applicable to the provision in which authority is given to the executors to sell and convey the real estate. Of course such an authority need not have been conferred, and was wholly superfluous, if the estate was devised in fee to Mrs. Eldredge. But this may not have been thought of by a comparatively illiterate writer in the preparation of the will; or possibly, in imperfectly following some form before him, it was inserted without any reflection upon its bearing or effect. Or it may have been that, as full authority and right were given to Mrs. Eldredge to use and give away the property at her pleasure, it was supposed that it might, in consequence of her exercising that right, become convenient, if not essential, that the executors, by whom of course the legacies were to be paid, should sell and dispose of the real estate in order to obtain funds which they were to hold in trust for that purpose. At any rate, in view of the inartificial character of the will, and of the allowances which ought on that account to be made, we cannot think that the insertion of this provision is entitled to

any very persuasive, much less of any controlling, influence in its construction.

And as little weight should be accorded to what is denominated the residuary clause in the will, so far as it is relied on to show that the real estate was devised to Mrs. Eldredge for her use during her own life only. In fact this clause does not speak of real estate at all, nor use terms which are apposite to its description or disposition. Its language is, " the remainder of my estate, after my wife has used and given away what she chooses, and all the legacies and expenses are paid out of the estate, I give the balance left to the abovewritten societies." " Balance " is a word certainly much more applicable to personal property than to land or tenements. It is possible that this clause, which immediately follows the legacy to Ann D. Cooper, had reference to the money with which it was to be paid. It was payable only if she survived the testator's wife, and failing to do so, the amount of it was to remain a part, as he expresses it, of his estate. He expressly calls this legacy, or the money with which it was to be paid, a part of his estate; and he may perhaps be considered as then proceeding to declare in the immediately following residuary clause, that in case it was not wanted for the payment to Miss Cooper, it should go to the societies which are to succeed, in the prescribed contingencies, to the legacies before bequeathed to the grandchildren. It is only by a forced and unnatural construction that this clause can be made to refer to the previous unlimited devise to his wife, or be allowed to curtail and diminish the estate which she would otherwise be entitled to take by force of it.

The conclusion from all these considerations is that Mrs. Eldredge took, under the will, an estate in fee in all the real estate of which the testator died seised and possessed, and also all his personal property, except so much as was required to pay the legacies to his grandchildren, and Miss Cooper, who it is agreed became entitled by survivorship to the amount given to her. *Decree accordingly.*